Leonard MILES III, Appellant,

v.

The STATE of Texas.

Nos. PD–1708–08, PD–1709–08.

Court of Criminal Appeals of Texas.

Dec. 7, 2011.

Christian T. Souza, Asst. Public Defender, Dallas, for Appellant.

Kimberly J. Pfannenstiel, Asst. D.A., Dallas, Lisa C. McMinn, State's Attorney, Austin, for The State of Texas.

WOMACK, J., delivered the opinion of the Court, in which MEYERS, PRICE, JOHNSON, COCHRAN, and ALCALA JJ., joined.

A jury convicted the appellant of unlawful possession of firearm and possession of codeine.

Our order granting review in the firearm case (our PD–1708–08, the Court of Appeals' case 05–07–1239–CR) was a clerical error, and the petition for discretionary review in that case is dismissed as improvidently granted.

The rest of our opinion will deal with the appeal of the codeine case (our PD–1709–08, the Court of Appeals' case 05–07–1240–CR), in which the appellant challenged the sufficiency of the evidence to support his conviction under Health and Safety Code Section 481.115, Possession of Substance in Penalty Group 1.

The Fifth Court of Appeals held that the evidence at the appellant's trial was sufficient to support his conviction under another section of the Health and Safety Code: Section 481.118, Possession of Substance in Penalty Group 4.[1]

We granted the appellant's petition for discretionary review on the following ground: "What codeine concentration is required to support a conviction for possession of codeine as a first-degree felony?" We hold that the Court of Appeals erred in failing to measure the sufficiency of the evidence against the elements of the offense for which the appellant was tried. We hold that the appellant was tried for possession of Penalty Group 1 codeine, and that the evidence presented at the appellant's trial was insufficient to support a conviction for that offense. We therefore reverse the Court of Appeals's decision in that case and render a judgment of acquittal.

## I. Sufficiency Standard

■ The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."[2] The standard for appellate review under that Clause is whether an appellate court can say that, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[3]

■ In Texas, the essential elements of the crime are defined by the "hypothetically correct jury charge" for the case.[4] The hypothetically correct jury charge "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, *and adequately describes the particular offense for which the defendant was tried.*"[5]

## II. Sufficiency Review on the Appeal

On appeal, the parties disagreed about the particular offense for which the appellant was tried. This disagreement stemmed from the failure of the indictment and jury charge to include an essential element that would distinguish among the three possession-of-codeine offenses in the Health and Safety Code.

The indictment alleged that, on or about February 10, 2005, the appellant possessed, with intent to deliver, codeine in the amount of 200 grams or more, including any adulterants or dilutants. The jury acquitted him of the offense of possession with intent to deliver, and found him guilty of the lesser offense of possession of that amount of codeine.

1. *Miles v. State*, 05–07–1240–CR, 2008 WL 4981642, 2008 Tex.App. LEXIS 8820 (Tex. App.-Dallas Nov. 28, 2008) (not designated for publication).

2. *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).

3. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (emphasis in original).

4. *Malik v. State*, 953 S.W.2d 234, 240 (Tex.Cr. App.1997).

5. *Ibid.* (emphasis added).

The appellant contends that he was convicted of the offense in Health and Safety Code Section 481.115: Possession of Substance in Penalty Group 1. Penalty Group 1 includes "codeine not listed in Penalty Group 3 or 4." [6] Possession of 200 grams of such codeine was a felony of the second degree.[7]

The State contended that the appellant was tried for the offense in Section 481.118: Possession of Substance in Penalty Group 4. Penalty Group 4 codeine consists of codeine compositions with "not more than 200 milligrams of codeine per 100 milliliters or per 100 grams," along with "one or more nonnarcotic active medicinal ingredients in sufficient proportion to confer on the compound, mixture, or preparation valuable medicinal qualities other than those possessed by the narcotic drug alone." [8]

The Fifth Court of Appeals acknowledged that no penalty group was alleged in the indictment, but found no authority for the appellant's contention that "when the State fails to allege a penalty group in the indictment, the State must then prove Penalty Group 1." [9] Because the evidence showed that the appellant possessed a codeine composition with a total weight of 304 grams and a concentration of 158 milligrams of codeine per 100 milliliters, "an amount [sic] set out in either Penalty Group 3 or 4," the Court of Appeals concluded the evidence was sufficient to support the appellant's conviction "for possession of 200 grams or more but less than 400 grams of codeine." [10] The Court of Appeals noted that "[t]o the extent appellant is attempting to argue indictment error, he has waived any error by failing to object at trial." [11]

■■ We hold that the Court of Appeals erred in failing to identify the offense for which the appellant was tried, and in then failing to measure the sufficiency of the evidence against the essential elements of that offense. Evidence of codeine concentration of 158 milligrams per 100 milliliters does not distinguish between Penalty Groups 1 and 4, since a substance will fall into Penalty Group 1 if it has such a concentration of codeine, but has insufficient concentration of active nonnarcotic ingredients to qualify for Penalty Group 4. Moreover, *Malik* requires that the evidence be measured against the hypothetically correct jury charge, which must "adequately describe[ ] the particular offense

6. TEX. HEALTH & SAFETY CODE § 481.102(3)(A) (as amended by the Act of June 19, 1993, 73rd Leg., R.S., Ch. 900, § 2.02). Subsequent amendments in 2009, of course, do not apply to this case.

7. *Id.*, § 481.115(d).

8. TEX HEALTH & SAFETY CODE § 481.105(1). The third possession of codeine offense in the Health and Safety Code is Section 481.117: Possession of Substance in Penalty Group 3. Penalty Group 3 codeine consists of codeine compositions with "not more than 1.8 grams of codeine ... per 100 milliliters ..., with one or more active nonnarcotic ingredients in recognized therapeutic amounts." TEX. HEALTH & SAFETY CODE § 481.104(a)(4).

9. *Miles*, 2008 WL 4981642, at *1.

10. *Id.*

11. *Id.* The Court of Appeals appears to misinterpret the appellant's argument. Had the appellant objected to the indictment, he may have had a strong argument stemming from *Benoit v. State*, 561 S.W.2d 810, 815 (Tex.Cr. App.1977), *overruled on other grounds by Harrison v. State*, 187 S.W.3d 429, 433 (Tex.Cr. App.2005), which held an indictment for possession of codeine fundamentally defective for failing to allege a penalty group. But the appellant is not challenging the validity of the indictment. Rather, his position is that he was actually indicted and tried for possession of Penalty Group 1 codeine, but was convicted on evidence that was not legally sufficient to prove that offense.

for which the defendant was tried."[12] A reviewing court may not merely conclude that the evidence was sufficient to prove that *some* offense occurred. The evidence must be sufficient to prove that a *particular* offense occurred, and the particular offense must be that for which the defendant was tried.[13]

### III. Determining the Particular Offense

With the failure of the indictment and jury charge to allege a specific codeine offense, we will look to the totality of the trial record to identify the particular offense for which the appellant was tried. The trial record provides clues when reviewed in conjunction with the following statutory framework of offenses and punishments related to codeine possession:

- Penalty Group 1 codeine is defined as "codeine not listed in Penalty Group 3 or 4."[14]
- Penalty Group 3 codeine is defined as "not more than 1.8 grams of codeine ... per 100 milliliters ..., with one or more active, nonnarcotic ingredients in recognized therapeutic amounts."[15]
- Penalty Group 4 codeine is defined as "a compound ... containing limited quantities of any of the following narcotic drugs that includes one or more

nonnarcotic active medicinal ingredients in sufficient proportion to confer on the compound ... valuable medicinal qualities other than those possessed by the narcotic drug alone: not more than 200 milligrams of codeine per 100 milliliters or per 100 grams."[16]

- Possession with intent to deliver 200 to 400 grams of Penalty Group 1 codeine is an offense punishable by imprisonment for life or for a term of not more than 99 years or less than 10 years, and a fine not to exceed $100,000.[17]
- Possession with intent to deliver 200 to 400 grams of Penalty Group 3 or 4 codeine is a first-degree felony offense.[18]
- Possession of 200 to 400 grams of Penalty Group 1 codeine is a first-degree felony offense.[19]
- Possession of 200 to 400 grams of Penalty Group 4 codeine is a second-degree felony offense.[20]
- The punishment for a first-degree felony is imprisonment for life or for any term of not more than 99 years or less than 5 years, and a fine not to exceed $10,000.[21]
- The punishment for a second-degree felony is imprisonment for any term of not more than 20 years or less than 2

---

12. 953 S.W.2d, at 240.

13. An appellate court, after finding evidence of the particular offense to be insufficient, may reform a trial court's judgment to reflect a conviction for a lesser-included offense, if such offense is supported by the evidence and was submitted to the jury or was requested by the party requesting reformation of the judgment. *See Tolbert v. State*, 306 S.W.3d 776, 782 n. 12 (Tex.Cr.App.2010); *Haynes v. State*, 273 S.W.3d 183, 184 (Tex.Cr.App.2008). In this case, the State does not contend that possession of Penalty Group 4 codeine should be considered a lesser-included offense of possession of Penalty Group 1 codeine, and the record does not reflect that such a lesser-included offense instruction was requested or given.

14. TEX HEALTH & SAFETY CODE § 481.102(3)(A).

15. *Id.*, at § 481.104(a)(4).

16. *Id.*, at § 481.105(1).

17. *Id.*, at § 481.112.

18. *Id.*, at § 481.114.

19. *Id.*, at § 481.115.

20. *Id.*, at § 481.118.

21. TEX. PEN.CODE § 12.32.

years, and a fine not to exceed $10,000.[22]

- If previously convicted of a felony, a defendant newly convicted of a second-degree felony shall be punished for a first-degree felony, and a defendant newly convicted of a first-degree felony shall be punished by imprisonment for life or any term of not more than 99 years or less than 15 years, and a fine not to exceed $10,000.[23]

At the top of the indictment, after the heading "Charge," was typed the following notation: "POSS CS INT DEL 200G PG3/4/2nd." This notation suggests the State originally intended to indict the appellant under Health and Safety Code Section 481.114: Manufacture or Delivery of Substance in Penalty Group 3 or 4, which includes possession of a controlled substance with intent to deliver. In the body of the indictment, however, the grand jury presented that the appellant "did unlawfully and knowingly possess with intent to deliver a controlled substance, to-wit: CODEINE, in an amount by aggregate weight, including any adulterants or dilutants, of 200 grams or more but less than 400 grams." The body of the indictment thus did not distinguish between the penalty groups that are elements of the possession with intent to deliver offenses in Health and Safety Code Sections 481.112 and 481.114. After presenting the offense, the grand jury further presented that the appellant had been previously convicted of a felony.

At the beginning of *voir dire*, the trial court read to the jury the allegations presented in the body of the indictment. The trial court then told the jury, without objection from either party, the punishments applicable to the offenses:

Now, our law says—y'all correct me if I'm wrong now, Counsel, but a person who is convicted of this offense, if convicted, is to be confined in the penitentiary for a minimum of ten years, maximum 99 years or life imprisonment and a fine can be added up to $10,000. So in the firearms case, if there's a conviction, the punishment would be two years up to ten years; in the codeine case, it would be ten years up to 99 years or life.

This confinement range of 10 to 99 years was consistent with possession with intent to deliver Penalty Group 1 codeine, but the maximum fine of $10,000 (rather than $100,000) was consistent with possession with intent to deliver Penalty Group 4 codeine.

The State questioned the jury during *voir dire* about the principles of aggregate weight, adulterants, and dilutants, but never about the concentrations and qualitative elements required to prove the penalty group of a codeine offense. During *voir dire* the State also informed the jury of the punishment range for the offense and the effect of a prior felony:

On the possession with intent to deliver case, the range of punishment is ten years all the way up to life, okay? ... Now, the question you're asking about what happens if we prove a prior conviction? All that does is it bumps the minimum up to 15, 15 to life if we show one prior conviction. Okay?

This statement was consistent only with the offense of possession with intent to deliver Penalty Group 1 codeine, because the punishment range for possession with intent to deliver Penalty Group 4 codeine would have been 5 to 99 years, enhanced by the prior felony to 15 to 99 years.

---

22. *Id.,* at § 12.33.

23. *Id.,* at § 12.42(b), (c)(1).

During the guilt phase of trial, the State called Monica Lopez, the supervisor of the drug laboratory that tested the substances possessed by the appellant. Lopez testified about the identity, quantity, and concentration of substances in the six jars comprising State's Exhibit 44:

[LOPEZ]: Exhibit 1–A–1, the content of one of six glass jars was used for analysis. The purple liquid contained codeine and promethazine. The amount of codeine found was 64 milligrams, which was at a concentration of 157 milligrams per 100 milliliters. The total weight of the liquid, including adulterants and dilutants, was 52 grams. The total volume of the liquid, including adulterants and dilutants, was 41 milliliters. Exhibit 1–A–2 through 1–A–6: The content of five of the six glass jars was used for analysis. The purple liquid contained codeine and promethazine. The amount of codeine found was 0.31 grams. The concentration was 158 milligrams per hundred milliliters. The total weight of the liquid, including adulterants and dilutants, was 252 grams. The total volume of the liquid, including adulterants and dilutants, was 197 milliliters. The aggregate weight or the weight of both of these exhibits was 304 grams. And the total volume of the liquid in both of these exhibits was 238 milliliters.

[STATE]: Now, reading that, you talked about two substances, codeine and promethazine. Can you explain to the jury what codeine is?

[LOPEZ]: Codeine is a narcotic analgesic. It's most often used for pain.

[STATE]: Is it a depressant?

[LOPEZ]: Yes, it's a central nervous system depressant, which means it just slows down the activities of the brain. It may cause drowsiness, sleepiness.

[STATE]: And is codeine a controlled substance?

[LOPEZ]: Yes, it is.

[STATE]: What about promethazine? What is that?

[LOPEZ]: Promethazine is most often found with codeine. Promethazine is an antihistamine. It's used as a sedative.

[STATE]: So if you were to go see the doctor and you got prescribed codeine and promethazine, there's a pain element in there as far as a reduction of pain and also an antihistamine working together; is that correct?

[LOPEZ]: That's correct.

[STATE]: Now, in your expert opinion of State's 44 and using State's 50, which is the lab report and the codeine, how—what was the aggregate weight of the codeine found in State's 44?

[LOPEZ]: The total weight of the liquid, including adulterants and dilutants, was 304 grams.

Neither Lopez's testimony nor State's Exhibit 50, the written lab report,[24] expressly stated or implied whether the promethazine found in these particular substances was or was not "in sufficient proportion to confer on the compound, mixture, or preparation valuable medicinal qualities other than those possessed by the narcotic drug alone."[25] The evidence thus failed to address the qualitative characteristics distinguishing Penalty Groups 1 and 4.

The trial court's written charge to the jury at the conclusion of the guilt phase recited the allegations presented in the body of the indictment: "The Defendant,

24. The only mention of promethazine in the written lab report was the following statement: "The purple liquid contained codeine and promethazine."

25. TEX. HEALTH & SAFETY CODE § 481.105(1) (defining Penalty Group 4).

Leonard Miles III, stands charged by indictment with the offense of possession with intent to deliver a controlled substance, to-wit: Codeine, in an amount by aggregate weight including any adulterants or dilutants of 200 grams or more but less than 400 grams." The charge instructed the jury that if it acquitted the appellant of the offense of possession with intent to deliver, it should consider next whether the appellant was guilty of the lesser-included offense of simple possession. The charge defined the lesser-included offense as "unlawfully and knowingly possess[ing] a controlled substance, to wit: CODEINE, in an amount by aggregate weight, including any adulterants or dilutants of 200 grams or more but less than 400 grams." The jury ultimately found the appellant guilty of the lesser-included offense of possession, but as with the indictment, the guilt phase jury charge did not include allegations that distinguished between penalty groups.

During closing argument at the punishment phase, the State argued that the appellant was "looking at 15 to life." This statement was consistent only with simple possession of Penalty Group 1 codeine, because the punishment range for possession of Penalty Group 4 codeine, enhanced by the prior felony, would have been 5 to 99 years. At the conclusion of the punishment phase, the trial court confirmed that neither the State nor defense counsel had any objections to its proposed punishment charge. The punishment charge required the jury to set the appellant's punishment at imprisonment "for a term of not more than ninety-nine (99) years or life, nor less than fifteen (15) years, and a fine up to

$10,000 (ten thousand dollars)." [26] The charge was therefore consistent only with possession of Penalty Group 1 codeine. The jury ultimately assessed punishment at imprisonment for 21 years and a fine of $500.

At the conclusion of the trial, the trial court entered a Judgment of Conviction by Jury. Under the heading "Offense for which Defendant Convicted," the judgment read "UNLAWFUL POSSESSION A CONTROLLED SUBSTANCE TO WIT: CODEINE 200G PG 3/4 2nd." Under "Statute for Offense," the judgment read "481.114 Health and Safety Code." Under "Degree of Offense," the judgment read "1ST DEGREE FELONY." These notations are internally inconsistent, as simple possession of Penalty Group 3 or 4 codeine would be separate second-degree felonies, and Health and Safety Code Section 481.114 contains possession with intent to deliver rather than simple possession.

We conclude from the foregoing evidence that the appellant was tried by the jury for the offense of possession of Penalty Group 1 codeine. The indictment and jury charge failed to include the following essential elements of the offenses in Health and Safety Code Sections 481.115 and 481.118: the negation of Penalty Groups 3 and 4,[27] and the qualitative elements of Penalty Group 4, respectively. But, we have characterized the qualitative elements of a Penalty Group 4 offense as a mitigating factor,[28] or an exception,[29] to the offense of possession of Penalty Group 1 codeine. The qualitative elements of Penalty Group 4 essentially describe codeine

---

**26.** The trial court's oral charge to the jury closely followed its written charge.

**27.** *See Sanchez v. State*, 275 S.W.3d 901, 906 (Tex.Cr.App.2009) (Keller, P.J., concurring) (negating status of belonging in Penalty

Group 3 or 4 is an express element of a Penalty Group 1 codeine offense).

**28.** *Id.*

**29.** *Id.*, at 907 (Johnson, J., concurring).

cough syrup, and we have noted that the design of the statute effectuates the legislature's intent to penalize possession of codeine cough syrup less severely than possession of codeine alone.[30] The elements alleged in the indictment and jury charge in this case describe a comprehensive set of codeine compositions that more closely aligns with the general subset of codeine compositions classified in Penalty Group 1 rather than the quite specific mitigating factor or exception classified in Penalty Group 4. In other words, the facts that the jury was asked to find to satisfy the elements alleged were more like the facts that would support a Penalty Group 1 general offense than the facts that would support a Penalty Group 4 exception.

The State would have us rely on the abbreviation "PG 3/4" in the heading of the indictment, the trial court's docket sheet, and the judgment to find that the appellant was tried under Section 481.118.[31] However, the abbreviation "PG 3/4" is consistent only with Section 481.114, which includes possession with intent to deliver a substance in either Penalty Group 3 or 4. The abbreviation is not consistent with Section 481.118, which involves possession of a substance in only Penalty Group 4. In addition, this abbreviation was not before the jury, and it does not affect the facts, or lack thereof, that were actually alleged and tried to the jury. Furthermore, nearly all statements with respect to punishment range made by the trial court and the State were consistent with Penalty Group 1 rather than Penalty Group 3 or 4 offenses, and the jury was ultimately required to assess punishment within the higher punishment range for a Penalty Group 1 offense.

### IV.   Application [32]

■■■ The hypothetically correct jury charge in this case required the State to prove the essential element of Penalty Group 1 that the codeine was "not listed in Penalty Group 3 or 4." [33] To prove this element, the State could show that (1) the

---

**30.**   *Id.,* at 905 (Keller, P.J., concurring).

**31.**   The State argues that our opinion in *Kirkpatrick v. State,* 279 S.W.3d 324 (Tex.Cr.App. 2009), supports the proposition that information in the heading of the indictment may be used to establish the specific offense with which a defendant is charged. While this proposition is true as far as it goes, we find *Kirkpatrick* of little assistance in the present case. In *Kirkpatrick,* the question was whether the indictment invested the district court with the necessary subject-matter jurisdiction to proceed to try the case. *Id.,* at 329. In the present case, the question is the particular offense for which the appellant was actually tried before the jury. We therefore use evidence from the entire record, including the indictment and its headings, to help us determine the particular offense for which the appellant was tried.

**32.**   Ordinarily, if a Court of Appeals uses an improper standard for reviewing the sufficiency of the evidence, we remand to that court to apply the proper standard. *See Malik,* 953 S.W.2d, at 240 (remanding the cause to the Court of Appeals "to apply the correct standard of review in analyzing appellant's points of error regarding the sufficiency of the evidence"). Under the circumstances of this case, however, the Fifth Court of Appeals would cause a separate due process violation if it found the evidence to be sufficient on remand, because such a finding would necessarily rely upon factual grounds not submitted to the jury—specifically, the negation of Penalty Groups 3 and 4. *See Malik,* 953 S.W.2d, at 238 n. 3 ("[D]ue process prevents an appellate court from affirming a conviction based upon legal and factual grounds that were not submitted to the jury."); *Wooley v. State,* 273 S.W.3d 260, 268 n. 13 (Tex.Cr.App.2008) ("This due process rule is not, and should not be confused with, an evidentiary sufficiency rule."). Since reversal of the conviction would be the only constitutionally acceptable result, we will therefore simply complete the sufficiency review ourselves.

**33.**   Tex. Health & Safety Code § 481.102(3)(A).

concentration of the codeine was more than 1.8 grams of codeine per 100 milliliters, or (2) the codeine was not combined with active nonnarcotic ingredients in recognized therapeutic amounts or in sufficient proportion to confer on the compound valuable medicinal qualities other than those possessed by the codeine alone.[34]

■ The evidence at trial showed only the mere presence of promethazine. Lopez's testimony contained no implications supporting a finding with respect to the therapeutic or medicinal qualities, or lack thereof, of the amount or concentration of promethazine in the particular substances seized and tested in this case. Lopez testified only that promethazine "is most often found with codeine. Promethazine is an antihistamine. It's used as a sedative." She also agreed with the State's assertion that "if you were to go see the doctor and you got prescribed codeine and promethazine, there's a pain element in there as far as a reduction of pain and also an antihistamine working together."

The evidence presented in *Sanchez* provides helpful contrast to show the type of evidence one might expect to prove or exclude Penalty Group 3 or 4. In *Sanchez*, there was no question that the appellant was tried for possession of Penalty Group 4 codeine. The State elicited testimony demonstrating the qualitative properties of Penalty Group 4 codeine by asking a witness whether "Promethazine on its own

has a *valuable medicinal quality.*"[35] We found the resulting testimony to be legally sufficient because the testimony "established the presence of Promethazine that 'on its own has a valuable medicinal quality,'" which supported a finding that the promethazine was "in sufficient proportion to confer on the substance valuable medicinal qualities."[36]

From the evidence presented in the present case, a rational juror could not infer whether the promethazine was or was not in recognized therapeutic amounts or in sufficient proportion to confer on the compound valuable medicinal qualities other than those possessed by the codeine alone. Because there was insufficient evidence as to an essential element of the particular offense for which the appellant was tried, we find the appellant's conviction to violate due process. We therefore reverse the decision of the Court of Appeals in Case 05–07–1240–CR and render a judgment of acquittal.[37]

COCHRAN, J., filed a concurring opinion, in which JOHNSON and ALCALA, JJ., joined.

KEASLER, J., concurred in the judgment.

KELLER, P.J., filed a dissenting opinion, in which HERVEY, J., joined.

COCHRAN, J., concurring in which JOHNSON and ALCALA, JJ., joined.

I join the majority. I write separately because this case is a mess. The law

34. *Id.*, at §§ 481.104(a)(4), 481.105(1). Technically, the State could also prove Penalty Group 1 if the concentration of codeine was between 1,800 and 200mg/100mL, and the codeine was combined with active nonnarcotic ingredients in sufficient proportion to confer on the compound valuable medicinal qualities other than those possessed by the codeine alone, but such active nonnarcotic ingredients were not in recognized therapeutic amounts.

35. *Sanchez*, 275 S.W.3d, at 903 (emphasis added).

36. *Id.*, at 905.

37. In PD–1708–08 (the Court of Appeals' case 05–07–1239–CR) the petition for discretionary review is dismissed as improvidently granted.

concerning possession of codeine is confusing and incoherent. The indictment in this case is vague, insufficient, and fails to inform anyone of the precise offense charged. The jury charge tracked the indictment and was equally insufficient and deficient. And, most importantly, the State failed to prove that appellant possessed codeine in any specific one of the three possible penalty groups. Aside from that, everything's fine, except that appellant, in spite of the proof that he possessed 304 grams of a codeine mixture, is entitled to an acquittal because the State failed to plead or prove any specific codeine offense.

Possession of codeine (or possession with intent to deliver codeine) may fall into one of three possible penalty groups under the Texas Health and Safety Code, depending on (1) its concentration in the final substance, and (2) whether the codeine is mixed with other medicines.[1] Codeine may come in various forms and it may be medically prescribed in various forms for different purposes. Pure codeine is very highly regulated, but it may be prescribed for certain maladies, such as pain from aggressive cancer. Other forms of codeine, mixed with other nonnarcotic drugs, are also controlled substances and may be obtained only by prescription, but their abuse is less likely to lead to serious medical problems, so the illegal possession of substances containing those medicines is less serious. The three different types of possible prescription codeine sources—pure form, strong form, weak form—act as a rough proxy for the three different penalty groups.

Codeine in Penalty Group 4 is prescription-level cough syrup.[2] Possession of codeine in Penalty Group 4 is prohibited if the actor did not obtain the cough medicine with a valid prescription.[3] The definition of "cough syrup" codeine in Penalty Group 4 is

> A compound, mixture, or preparation containing limited quantities of any of the following narcotic drugs that includes one or more nonnarcotic active medicinal ingredients in sufficient proportion to confer on the compound, mixture, or preparation valuable medicinal qualities other than those possessed by the narcotic alone: not more than 200 milligrams of codeine per 100 milliliters

---

1. The Penalty Groups roughly correspond to the Controlled Substance Schedules, which are lists of controlled substances published every year by the Texas Commissioner of Public Health. The schedules are published in the Texas Register and can be accessed here: http://www.dshs.state.tx.us/Layouts/Content Page.aspx?PageID=35821&id=3847 (last accessed November 16, 2011). The January 2011 schedule is available at 36 Tex. Reg. 306 (January 21, 2011), or online at http://www.dshs.state.tx.us/dmd/PDF/Schedules2011.pdf.

2. This category of codeine usually refers to Promethazine/codeine syrup which contains an antihistime (promethazine) and a cough suppressant (codeine). Another name for this substance is Pherergan/codeine syrup. This substance is a Schedule V narcotic under the Federal Controlled Substance Act. 21 U.S.C.

§ 829(c). These are generally over-the-counter medications, but Texas regulated their use under Tex. Health & Safety Code § 481.074(i) ("A person may not dispense a controlled substance listed in Schedule V [of the federal act] and containing 200 mg or less of codeine ... per 100mL or 100g, without the prescription of a practitioner"), because these cough syrups were being diluted and abused as a concoction called "drank." *See Wyatt v. Department of Fam. & Protective Serv.*, 193 S.W.3d 61, 65 (Tex.App.-Houston [1st Dist.] 2006, no pet.). This "hip-hop community" drink is described in Wikipedia, which is perhaps an acceptably authoritative source for this sort of "street argot" information. *See generally,* "Purple Drank" http://en.wikipedia.org/wiki/Purple_drank.

3. TEX. HEALTH & SAFETY CODE § 481.118(a).

or per 100 grams.[4]

So when the State wants to charge a defendant with unauthorized possession of regular prescription "cough syrup," this is what it should both plead and prove. The indictment should allege all that verbiage, the jury charge should include all that verbiage, and a witness must testify that the substance analyzed fits that lengthy definition.

But the actor might possess stronger prescription "cough syrup" or prescription pain pills, such as Tylenol 3, that contain codeine.[5] That type of medicinal codeine falls into Penalty Group 3. The definition of "cough syrup on steroids" or prescription pills containing codeine in Penalty Group 3 is

a material, compound, mixture, or preparation, containing limited quantities of the following narcotic drugs, or any of

their salts: not more than 1.8 grams of codeine, or any of its salts, per 100 milliliters or not more than 90 milligrams per dosage unit, with one or more active, nonnarcotic ingredients in recognized therapeutic amounts.[6]

Again, the State should plead the unauthorized possession of codeine in Penalty Group 3 by setting out all that verbiage; the jury charge should track that verbiage, and a witness must testify that the substance possessed by the defendant meets that specific definition.

Possession of codeine, without a prescription, that does not meet the definition of either Penalty Group 3 or Penalty Group 4 is proscribed in Penalty Group 1.[7] That is, the substance contains some amount of codeine (any amount at all) but (1) it does not contain other nonnarcotic therapeutic ingredients, *or* (2) it does contain some nonnarcotic therapeutic ingredi-

---

**4.** *Id.*, § 481.105(1).

**5.** Penalty Group 3 codeine medications include, for example, Empirin 4 (aspirin and codeine No.4 for pain), Fiorinal 3 (aspirin, caffeine, codeine No.3, and a barbituate; used for tension headaches), and Tylenol 3 (Tylenol and codeine No.3 for pain). The codeine numbering system shows the concentration of codeine; higher numbers denote higher concentrations. Each of these other ingredients (aspirin, caffeine, Tylenol, etc.) are the "nonnarcotic active medicinal ingredients" that "confer on the mixture ... valuable medicinal qualities other than those possessed by the narcotic alone" referred to by the statute. TEX. HEALTH & SAFETY CODE § 481.105(1).

**6.** *Id.*, § 481.104(4).

**7.** *Id.*, § 481.102(3)(A). Possession of codeine in Penalty Groups 3 or 4 is a less serious offense than possession of codeine in Penalty Group 1, but it is not always true that possession of codeine in Penalty Groups 3 or 4 is a lesser-*included* offense of possession of codeine in Penalty Group 1. The less serious offense requires proof of an element—a mixture that contains a nonnarcotic ingredient that confers upon the mixture medicinal qual-

ities other than those possessed by pure codeine—that is not necessary to prove possession of codeine in Penalty Group 1. One small pill of pure codeine, dissolved in a bottle of soda, will always be a Penalty Group 1 offense, regardless of how weak the concentration of codeine in the liquid. It is not the final concentration or percentage of codeine in the bottle of soda that is determinative; it is the fact that the actor used a very highly controlled substance—pure codeine—to start with. Pure codeine pills are much stronger and more highly controlled than are cough syrups containing codeine. Sometimes, of course, an offense under Penalty Group 3 or 4 is a lesser-included offense of an offense under Penalty Group 1. For example, suppose the codeine mixture does contain a nonnarcotic active medicinal ingredient in sufficient proportion to confer on the mixture valuable medicinal qualities other than those possessed by the narcotic alone, but the concentration of codeine in that mixture is greater than 1.8 grams per 100 milliliters, the State may plead a Penalty Group 1 offense. If the proof shows that it is only 1.7 grams per 100 milliliters, the State could seek an instruction on the lesser-included Penalty Group 3 offense.

ents, but the codeine concentration is greater than 1.8 grams (Penalty Group 3) or 200 mg (Penalty Group 4) per 100 milliliters of substance.[8] If the State wishes to charge possession of codeine in Penalty Group 1, it should plead that the defendant possessed codeine (in some amount) "not listed in Penalty Group 3 or 4." The indictment should explicitly state that the defendant did

> intentionally or knowingly possess [or possess with intent to deliver] a controlled substance, to-wit: CODEINE not listed in Penalty Group 3 or 4, in an amount by aggregate weight, including any adulterants or dilutants, of 200 grams or more but less than 400 grams.

The jury charge should do the same, except that the jury charge must also set out the definitions of codeine in Penalty Groups 3 and 4, so the jury can determine that this substance containing codeine does not meet those definitions, i.e., it is neither regular nor super-strong cough syrup, nor regular prescription-level codeine medication. Similarly, a witness must testify that this substance does not contain the nonnarcotic substances that give therapeutic value to codeine listed in Penalty Groups 3 and 4.

The Legislature has chosen to define the illegal possession of codeine in a very infelicitous manner,[9] especially by defining the most serious offense (codeine that does not have nonnarcotic agents added that give it additional medicinal value or that has too high a concentration of codeine along with the nonnarcotic medicines) set out in Penalty Group 1 as requiring the State to disprove that the substance falls into Penalty Group 3 or 4. Nonetheless, the Legislature writes the laws, and generally it is entitled to write them in the manner it chooses, regardless of the burden this puts on others.

In the present case, the indictment stated that appellant did

> unlawfully and knowingly possess with intent to deliver a controlled substance, to-wit: CODEINE, in an amount by aggregate weight, including any adulterants or dilutants, of 200 grams or more but less than 400 grams.

No one can tell by looking at the indictment which Penalty Group—1, 3, or 4—that the State alleged.[10] The indictment could have alleged all of the statutory verbiage in either Penalty Group 3 or 4; it could have alleged "codeine not listed in Penalty Group 3 or 4"; it could even have alleged "Codeine listed in Penalty Group 1," "Codeine listed in Penalty Group 3," or "Codeine listed in Penalty Group 4." This indictment is defective. But appellant did not file a motion to quash, so it is now too

---

**8.** Penalty Group 1 codeine medications would include, for example, Codeinum ("codeine base" pellets; a prescription-only homeopathic remedy for severe coughs) or codeine sulfate (strong, pure codeine, without any other medicinal ingredients; used for severe pain).

**9.** Several other drugs listed in Penalty Group 1 share this same peculiar characteristic that requires the State to plead and prove that the substance the actor possessed is not listed in Penalty Group 3 or 4.

**10.** The dissent notes that the notation "POSS CS INT DEL 200G/PG3/4/2nd" appears in the top right-hand corner of the indictment under the heading "Charge." We may look to the caption of an indictment to discern what offense the State intends to plead, but in this case, that caption is not very helpful because it presumably stands for Penalty Group 3 or 4. These are two separate offenses, so the caption is somewhat like "assault/agg. assault D/W." At any rate, even if one could discern the specific offense that the State intended to allege, the jury charge does not say anything about the specific offense that the jury must agree on and the evidence does not support proof, beyond a reasonable doubt, of any specific offense.

late for him to complain about the indictment.

Similarly, the jury charge in the present case did not ask the jury to decide whether the State had proven that appellant possessed with intent to deliver codeine in Penalty Group 1, 3, or 4. The jury charge contains no definitions of codeine, except to say, "You are instructed that Codeine is a controlled substance." Possession or possession with intent to deliver any of these three types of codeine without a prescription may be illegal, but the type of codeine one possesses makes a significant difference in the punishment level. These punishment levels are so significant that the offenses are listed in entirely different statutes: Manufacture or Delivery of Substance in Penalty Group 1 is an offense under Section 481.112; Manufacture or Delivery of Substance in Penalty Group 3 or 4 is an offense under Section 481.114; Possession of Substance in Penalty Group 1 is an offense under Section 481.115; Possession of Substance in Penalty Group 3 is an offense under Section 481.117; and Possession of Substance in Penalty Group 4 is an offense under Section 481.118. The Legislature obviously intended all of these to be separate and distinct offenses with separate and distinct penalty ranges. The State must pick one offense and then prove that one.

The evidence in this case showed that appellant possessed 238 milliliters of a liquid that weighed 304 grams and had both codeine and promethazine in it. The concentration of codeine was 158 milligrams per one hundred milliliters. It looks as if the State was attempting to prove that appellant was making "drank" and was using a prescription cough syrup that contains promethazine. That substance would fall into Penalty Group 4. But as the majority explains, the State never asked "the magic question"—whether the nonnarcotic substance—the promethazine—was "in sufficient proportion to confer on the compound, mixture, or preparation valuable medicinal qualities." [11] Of course the State need not prove that any particular proportion or amount of the promethazine was present, only that the promethazine was a nonnarcotic substance and it was present in a "sufficient proportion to confer on the compound valuable medicinal qualities other than those possessed" by the codeine alone.[12] Common sense may suffice for many things, but it will not suffice for satisfying the statutory definition of the appropriate penalty group and hence the correct codeine offense. Under these circumstances, appellant is entitled to an acquittal because the evidence is insufficient to prove his guilt for possessing a substance that meets the definition of any of the three possible penalty groups.

11. *See generally Sanchez v. State,* 275 S.W.3d 901 (Tex.Crim.App.2009) (evidence was sufficient to show that nonnarcotic substance in mixture in bottle containing codeine was in sufficient proportion to confer on that mixture valuable medicinal qualities other than those possessed by the codeine itself).

12. *See Sanchez v. State,* 275 S.W.3d 901, 905–07 (Tex.Crim.App.2009) (Keller, J., concurring). I joined Judge Keller's concurrence in *Sanchez,* and I agree entirely with her statement that "the failure to prove the proportion of promethazine does not render the evidence legally insufficient to support a conviction for an offense involving codeine under Penalty Group 4." *See infra,* dissenting op., at 645. The State must, however, prove that the promethazine, in whatever proportion (or quantity) it is found within the substance is (1) a *sufficient* proportion to (2) give the mixture valuable medicinal qualities *other than* those possessed by the codeine alone. The State must prove the definition of codeine under Penalty Group 4, but it need not prove any particular quantity of the nonnarcotic or any particular proportion of it within the final mixture.

Perhaps the Legislature will redraft these statutes to make them a little more user (and jury) friendly. Until and unless it does, a witness must testify that the substance meets the statutory definition of codeine as that definition is statutorily set out in either Penalty Group 1, 3, or 4. And the jury charge must contain the statutory definition of the appropriate penalty group. Finally, if a defendant files a motion to quash the indictment for lack of notice, the State must allege which penalty group offense it plans to prove in the indictment.

With these additional comments, I join the majority opinion.

KELLER, P.J., dissenting in which HERVEY, J., joined.

Viewed from the correct perspective, this case is not as complicated as it might appear. A serious error occurred, but it was an error in the jury charge, not an insufficiency of the evidence. The indictment in the present case did not authorize a conviction for a Penalty Group 1 offense, so the sufficiency of the evidence cannot be measured against that offense.

We have held that the caption in an indictment should be considered in determining what offense the indictment charges.[1] In this case, the caption identified the offense as "PG 3/4," which clearly conveyed that the offense involved Penalty Group 3 or 4, rather than Penalty Group 1.[2] Even if the "PG 3/4" notation simply created an ambiguity as to what offense was charged, such an ambiguity would have to be resolved in of favor Penalty Group 3 or 4 because Penalty Group 1 is the greater offense: We know that appellant was charged by the indictment with *at least* a Penalty Group 3 or 4 offense. We cannot with any certainty ascertain that he was charged by the indictment with a Penalty Group 1 offense, and so we cannot conclude that the indictment charges that offense.[3]

The Court contends that, under *Malik*, we must focus on the offense that was tried.[4] In *Malik*, we said:

Hence, sufficiency of the evidence should be measured by the elements of the offense as defined by the hypothetically correct jury charge for the case. Such a charge would be one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.[5]

But although *Malik* did say that an offense defined by a hypothetically correct jury charge is one that "adequately describes the particular offense for which the defendant was tried," it also stated that the offense must be "authorized by the indictment." In subsequent cases, we have emphasized the importance of this "authorized by the indictment" language, saying

---

1. *Kirkpatrick v. State*, 279 S.W.3d 324, 329 (Tex.Crim.App.2009).

2. *See id.* ("the notation that the offense was a third-degree felony clearly indicated that the State intended to charge a felony offense").

3. *See Duron v. State*, 956 S.W.2d 547, 552 (Tex.Crim.App.1997) ("The failure to include one or more elements of the offense in the indictment, while a defect of substance, is not a defect of constitutional magnitude causing the indictment not to be an indictment under Texas Constitution Article V, § 12 provided the indictment charges an identifiable offense.")

4. Court's op. at 631–32, 632–33, 633, 636–37, 637 n. 31, 637–38.

5. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim.App.1997).

that a sufficiency review must be limited to the statutory manners and means alleged in the charging instrument.[6]

Although there is some ambiguity about the matter,[7] it appears that the State and the trial court may have operated under the impression that the offense at issue was a Penalty Group 1 offense. But it doesn't matter what they thought. The indictment handed up by the grand jury authorized a prosecution only for a Penalty Group 3 or 4 offense. Although a defendant could waive the right to indictment with respect to a greater or different offense than the one with which he was initially charged, such a waiver would have to be express,[8] and no such waiver is contained in the record of this case.

Judge Cochran contends, among other things, that the evidence is insufficient to show a Penalty Group 4 offense because the evidence does not show that promethazine was present "in sufficient proportion to confer ... valuable medicinal qualities."[9] In other words, appellant did not prove that there was enough non-codeine

cough medicine in the mixture. But that is a *mitigating* fact that distinguishes Penalty Group 4 codeine from Penalty Group 1 codeine. To obtain a conviction for a Penalty Group 1 codeine offense, the State has to disprove that mitigating fact; it does not actually have to prove that fact to obtain a conviction for the lesser, Penalty Group 4 codeine offense.

I made this point in my concurring opinion in *Sanchez v. State*, where the court of appeals held that the evidence was insufficient to prove a Penalty Group 4 codeine offense because there was insufficient proof regarding the proportion of promethazine in the mixture.[10] I pointed out that the court of appeals was involved in the same sort of fruitless struggle that occupied this Court when it considered the absence of evidence of sudden passion in a voluntary manslaughter prosecution.[11] I concluded that relief should be denied on a legal sufficiency claim regarding the proportion of promethazine because the bottom line was, if promethazine wasn't present in sufficient proportion to confer

---

6. *Geick v. State*, 349 S.W.3d 542 (Tex.Crim. App.2011) (an alternative manner and means in the definition of an element is part of the sufficiency review if its use in the indictment narrows the scope of the offense); *Cada v. State*, 334 S.W.3d 766, 773–74 (Tex.Crim.App. 2011) (sufficiency of the evidence must be measured by whether service as a witness was shown because it was the only manner of committing retaliation that was alleged in the indictment); *Curry v. State*, 30 S.W.3d 394, 404–05 (Tex.Crim.App.2000) (sufficiency of the evidence must be measured by whether the allegation "using and threatening to use deadly force" was shown because that was the manner of committing kidnapping alleged in the indictment).

7. As the Court says, the maximum fine of $10,000 referred to by the trial court was inconsistent with the punishment range for a Penalty Group 1 offense of possession of 200 to 400 grams with intent to deliver, where the maximum fine is $100,000. *See* Tex. Health &

SAFETY CODE § 481.112(e). Also, the Court points out that the trial court's judgment refers to the offense as involving Penalty Group 3 or 4.

8. *See Murray v. State*, 302 S.W.3d 874, 877 n. 11, 881 (Tex.Crim.App.2009); Tex.Code Crim. Proc art. 1.141.

9. Judge Cochran's concurring op. at 642.

10. 275 S.W.3d 901, 905–07 (Tex.Crim.App. 2009) (Keller, P.J., concurring). *See also Sanchez v. State*, 264 S.W.3d 132, 137 (Tex. App.-Houston[1st Dist.] 2007) (holding that the "State was required to prove, as one of the elements of the offense, that the nonnarcotic active medicinal ingredient was in sufficient proportion to confer on the mixture valuable medicinal qualities other than those possessed by the codeine alone"), *rev'd*, 275 S.W.3d 901 (Tex.Crim.App.2009).

11. 275 S.W.3d at 907.

valuable medicinal qualities, then the defendant was "guilty of a greater offense than that for which he was convicted."[12] In her concurrence in *Sanchez*, Judge Johnson agreed, pointing out that any failure of proof regarding the proportion of promethazine accrued to the benefit of the appellant because "[t]he presence of promethazine saved appellant from a felony penalty range."[13]

The Court also agrees, relying upon my concurring opinion in *Sanchez* for the proposition that in a Penalty Group 1 prosecution, the State must prove that the codeine does not fall in Penalty Group 4.[14] The Court's opinion in *Sanchez* did not take issue with anything said in my concurrence, and Judges Womack, Cochran, and Holcomb joined my concurring opinion.[15] When Judge Johnson's sentiments are also considered, there were five votes in *Sanchez* for the proposition that the failure to prove the proportion of promethazine does not render the evidence legally insufficient to support a conviction for an offense involving codeine under Penalty Group 4. That is a majority and, at least arguably, binding precedent.

Finally, although appellant was charged with possession with intent to deliver, he was convicted of the lesser offense of simple possession. He had a prior felony conviction that was used for enhancement. Under those circumstances, the jury should have been instructed on the punishment range applicable for an enhanced Penalty Group 3 or 4 offense—the range for a first-degree felony, five to 99 years or life.[16] Instead, the jury was instructed on a punishment range of 15 to 99 years or life, a range consistent with an enhanced Penalty Group 1 offense.[17] But appellant did not complain of jury-charge error in this Court or before the court of appeals, so that issue is not before us. I would affirm the judgment of the court of appeals. I respectfully dissent.[18]

---

12. *Id.*

13. *Id.* at 207–08.

14. Court's op. at 636–37 & n. 27.

15. See *Sanchez*, generally.

16. *See* TEX. HEALTH & SAFETY CODE §§ 481.117(d) (possession of 200 to less than 400 grams of controlled substance under Penalty Group 3 is second-degree felony), 481.118(d) (possession of 200 to less than 400 grams of controlled substance under Penalty Group 4 is second-degree felony); TEX. PENAL CODE § 12.42(b) (one prior felony conviction enhances punishment for second-degree felony to first degree).

17. *See* TEX. HEALTH & SAFETY CODE § 481.115(e) (possession of 200 to less than 400 grams of controlled substance under Penalty Group 1 is first-degree felony); TEX. PENAL CODE § 12.42(c)(1) (one prior felony conviction raises minimum punishment for first-degree felony to 15 years).

18. Moreover, the issue of whether a conviction procured under the present circumstances can be reformed to a lesser-included offense on appeal is pending before this Court in *Bowen v. State*, PD–1607–10. Rather than enter an acquittal on the basis of *Collier v. State*, 999 S.W.2d 779 (Tex.Crim.App.1999), this Court should wait until *Bowen* is decided.